UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES D. TINCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:06-CV-454 |
| ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 14] and the defendant's motion for summary judgment. [Doc. 16]. Plaintiff James D. Tinch ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the defendant Commissioner ("the Commissioner").

**I.    ALJ Findings**

ALJ Eduardo Soto made the following findings:

> 1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 <u>et seq.</u>).
>
> 2. The claimant has the following severe impairments: obesity, chronic obstructive pulmonary disease, anxiety, and arthralgias (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically exceeds one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.928 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of unskilled sedentary work.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on December 21, 1968 and was 34 years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

[Tr. 13-18].

## II.  Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 1142 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997). Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324, 1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached"); Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## IV. Arguments

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred by: (A) failing to provide Plaintiff with a requested hearing tape; (B) failing

4

to consider the effects of Plaintiff's obesity on his impairments; and (C) disregarding Plaintiff's low intellectual quotient scores and the physical and mental impairments, which impose additional and significant work-related limitations. [Doc. 15]. The Commissioner contends that substantial evidence supports the ALJ's decision regarding the issues presented on appeal by Plaintiff. Specifically, the Commissioner argues: (A) that no error inured to Plaintiff by virtue of not receiving the hearing tape; (B) the ALJ appropriately considered the effects of Plaintiff's obesity on his impairments; and (C) substantial evidence exists to support the ALJ's decision that Plaintiff is not disabled based on his intellectual quotient and other impairments. [Doc. 17].

### A. *Hearing Tape*

Plaintiff argues that the Appeals Council erred by not providing Plaintiff with a requested tape of the administrative hearing. [Doc. 15]. The Commissioner responds that no error inured to Plaintiff by virtue of not receiving the hearing tape. [Doc. 17]. Plaintiff asserts that his counsel sent a letter to the Appeals Council requesting a tape. [Doc. 15, page 2].

The Court has thoroughly reviewed the record and found no notation of Plaintiff's request for a copy of the tape. Plaintiff correctly notes that the Appeals Council must provide a copy or summary of the transcript of the oral evidence upon request, and the parties are permitted a reasonable opportunity to file briefs. 20 C.F.R. §§ 404.974, 404.975.[1] However, as the Commissioner rightly noted, Plaintiff has neither presented evidence suggesting that the Appeals Council failed to review the hearing tape nor demonstrated that he was in any way harmed by not receiving a copy of the hearing tape.

---

[1]The Court has searched for analogous cases on this issue, and none appear to exist.

In any event, the Court notes that a transcript of the proceedings is provided in the record before this Court. [Tr. 382-96]. Plaintiff has not even alleged that there is any discrepancy in the transcript and what allegedly was said at the hearing. Accordingly, Plaintiff had the opportunity to review the transcript and utilize any needed portions in the brief before this Court. As such, this Court finds that no error was committed by the Appeals Council in regards to the tape, and Plaintiff's argument pertaining to the tape is without merit.

### B. *Consideration of the Effect of Obesity*

Plaintiff argues the ALJ failed to consider the effects of Plaintiff's obesity on his other disabilities. [Doc. 15]. The Commissioner responds that the ALJ appropriately considered the effects of Plaintiff's obesity on his impairments, and substantial evidence supports his determination. [Doc. 17].

The record reflects that Plaintiff is approximate five foot, three inches tall, and weighs over three hundred and fifty pounds. [Tr. 254, 266, 282 ]. Numerous doctors and medical sources have diagnosed Plaintiff as "morbidly obese." [Tr. 254-56, 257-64, 266, 286-93]. Several medical sources and consultative physicians have opined on the impact Plaintiff's obesity has on his ability to work.

In a letter dated June 12, 2002, Ms. Judy Smith ("Ms. Smith"), an advanced practice registered nurse, informed the Health Department that the only valid medical reason Plaintiff cannot work is his obesity. [Tr. 269]. In that same letter, she noted, "from my observations, Mr. Tinch is not particularly interested in proactive health modifications. I have emphasized the need for weight loss, moderate exercise and other lifestyle change[s] to promote his health and enable him to find suitable employment." [Id.]. To the extent this letter suggests that Ms. Smith believed Plaintiff's

6

obesity to be disabling, such a suggestion is contradicted by her notation on June 20, 2002, that Plaintiff "has not been seeking employment," which implies that he is capable of employment. [Tr. 266].

Consultative physicians have uniformly held that Plaintiff's obesity does not preclude employment. On October 9, 2001, a consultative physician[2] found that Plaintiff, despite his obesity, could: occasionally lift twenty pounds; frequently lift ten pounds; stand at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; never utilize ladders, ropes, or scaffolds; occasionally utilize ramps and stairs; and occasionally balance, stoop, kneel, crouch, or crawl. [Tr. 257-264]. On August 19, 2002, Dr. Louise G. Patikas ("Dr. Patikas") made the same determinations, but noted that Plaintiff could occasionally utilize a ladder, rope, or scaffold. [Tr. 286-293]. On June 18, 2003, another consultative physician[3] made findings identical to that of Dr. Patikas. [Tr. 317-20].

Dr. Shane Roberts performed a consultative exam on Plaintiff on July 23, 2002. [Tr. 281]. He determined that Plaintiff could

> occasionally lift or carry including upward pulling for up to 1/3 of an 8-hour work day, a maximum of 15 to 20 pounds. He maintains the capacity to frequently lift and/or carry from 1/3 to 2/3 of an 8 hour work day, a maximum of 10 to 15 pounds. He can stand or walk with normal breaks for a total of less than 2 hours in an 8-hour work day. He can sit with normal breaks for a total of about 6 hours in an 8 hour work day. The claimant has no other impairment related physical limitations.

[Tr. 284]. On May 12, 2003, Dr. Joseph Johnson, a consultative physician with the Tennessee

---

[2]The doctor's name and signature are illegible.

[3]The doctor's name and signature are illegible, but the abbreviation "M.D." is apparent.

Disability Determination Services, determined that Plaintiff "[s]hould be able to sit for more than 6 hours during an 8-hour day, stand or walk for 90 minutes during an 8-hour day. Routinely lift 15 pounds and occasionally lift 25 pounds." [Tr. 310]. Additionally, numerous consultative examiners determined that Plaintiff did not suffer from any manipulative, visual, communicative, or environmental limitations[4]. [Tr. 257-264,[5] 286-293, 317-320[6]].

Further substantiating these determinations is Plaintiff's own failure to keep appointments and to pursue treatment for his conditions. Plaintiff failed to show up for appointments with medical clinics on April 29, 2002; May 29, 2002; October 20, 2003; November 21, 2003; and March 8, 2004[7]. [Tr. 276, 349-50]. Plaintiff has never had an operation or been admitted to the hospital for treatment. [Tr. 281]. Additionally, as the ALJ well-noted, the record reflects that Plaintiff did not pursue any medical treatment from June 2002 to July 2003. [Tr. 13].[8] Moreover, Plaintiff reported to Dr. Shane Roberts that he can clean dishes, do laundry, and clean, but that he is not able to do yard work. [Tr. 283]. However, Plaintiff's mother noted on a Third Party Function report that Plaintiff does his laundry and mows. [Tr. 229-237].

Contrary to Plaintiff's argument and based upon the medical evidence of record, the ALJ did consider Plaintiff's obesity and found that claimant was somewhat functionally impaired due to his

---

[4]A physician did place a limitation upon Plaintiff stating that Plaintiff should avoid concentrated exposure to fume, odors, and dusts. [Tr. 317-320].

[5]See supra note 2.

[6]See supra note 3.

[7]The date was somewhat illegible, but it appears to be March 8, 2004.

[8]The record reflects that Plaintiff did see doctors, but each of those exams was for solely consultative, and not treatment, purposes.

morbid obesity, which causes some discomfort in his knees and lower back. [Tr. 15]. However, the ALJ also found that the record was "[d]evoid of any objective evidence of significant abnormalities." [Id.]. The ALJ further noted that Plaintniff's "[f]ailure to seek more than minimal medical treatment in light of allegations of disabling pain, fatigue and anxiety certainly undermines the credibility of his complaints. The minimal treatment notes available do not show that the claimant has ever taken a prescription pain medication, only an anti-inflammatory drug." [Tr. 16].

Upon review of the entire record, the Courts finds substantial evidence exists to support the ALJ's determination that Plaintiff, though morbidly obese, retains the residual functional capacity to perform sedentary work. Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 404.416.967(a). The medical opinions indicate Plaintiff is capable of performing this type of work. Further, as the ALJ well-noted, Plaintiff's failure to seek treatment substantiates the finding that Plaintiff is not disabled.

In sum, the Court finds that the ALJ performed an individual assessment, pursuant to Social Security Administration Ruling 02-19, 2000 WL 628049, at *4 (Sept. 12, 2002), regarding the impact Plaintiff's obesity has on his ability to function. The ALJ correctly considered the effects of Plaintiff's obesity, and substantial evidence supports his determination that Plaintiff is not disabled.

### C. *According Proper Weight to the Medical Opinions of Record*

Plaintiff argues the ALJ disregarded the combination of Plaintiff's low intellectual quotient scores and his physical and mental impairments imposing additional and significant work-related limitations. [Doc. 15]. The Commissioner responds that substantial evidence exists to support the ALJ's decision that Plaintiff is not disabled based on his intellectual quotient and other impairments. [Doc. 17].

First and foremost, the Court notes one of the ALJ's apt observations; the record in this case is scant, at best. The record is devoid of anyone who could be classified as a treating physician. Moreover, while Plaintiff has been to many doctors, the vast majority are consultative examiners.

The ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of unskilled sedentary work. [Tr. 13-18]. Unskilled work is "[w]ork which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568 (a).

Mr. Stephen Hardison, M.A. performed a consultative exam on Plaintiff on July 7, 2003. [Tr. 324-30]. He found that Plaintiff's verbal intelligence quotient was sixty-two, his performance intelligence quotient was sixty-four, and his full scale intelligence quotient was sixty. [Tr. 327]. These scores are within the mild mental retardation range. [Id.]. Mr. Hardison also noted:

> [These scores are] felt to represent this claimant's intellectual capabilities and it is felt he is at least capable of functioning within the borderline approximately low average range intellectually. Performances were adversely affected primarily by motivational factors. These results likely under represent his true capabilities.
> . . . . .
> He should be capable from a cognitive standpoint of learning basic

routine job tasks.

[Tr. 327-28].

Tennessee Disability Determination Services medical sources[9] opined, on July 22, 2002, that the claimant likely had a low average range of intellectual functioning, but he appeared to have adequate cognitive functioning and literacy. [Tr. 277-280]. Moreover, he appeared capable of learning simple tasks. [Tr. 279]. Another physician for Tennessee Disability Determination Services, Dr. Shane Roberts, stated that Plaintiff's intellectual function was average, but that his reliability is questionable based on his lack of cooperation during the consultative exam. [Tr. 282]. On May 12, 2003, Dr. Joseph L. Johnson, also with Tennessee Disability Determination Services, stated that Plaintiff's concentration level were normal. [Tr. 309]. Dr. William Kenney, the final Tennessee Disability Determination Services doctor of record, found, on June 10, 2004, that Plaintiff was not significantly limited in his ability to understand or remember, but was limited in his concentration and persistence, social interaction, and adaptation. [Tr. 357-60]. The Court notes that Dr. Kenney never stated Plaintiff was significantly limited in any of these areas. [Id.].

There are two Mental RFC Assessment forms: one done by Dr. Rebecca Hansmann ("Dr. Hansmann") on June 21, 2003, and the other by Dr. Edward L. Sachs ("Dr. Sachs") on July 6, 2004. [Tr. 345-347, 361-363]. Dr. Hansmann determined that Plaintiff was not significantly limited in eleven out of twenty areas of mental assessment, and moderately limited in nine areas. [Tr. 345-347]. Of import, Dr. Hansmann did not find Plaintiff to be suffering from any marked limitations. [Id.]. She further stated, "claimant can understand, remember, concentrate and persist for simple

---

[9] The forms were signed by Mark A. Loftis, M.A., and William Sewell, Ph.D. [Tr. 277-280]. It is unclear who actually performed the consultative evaluation. [Id.]

and low-level detailed tasks, despite periods of increased symptoms. Claimant will experience some, but not substantial, difficulty interacting with the general public and co-workers. Claimant can adapt to infrequent change and set limited goals." [Id.].

Dr. Sachs's opinion is quite similar to Dr. Hansmann's. [Id., Tr. 361-63]. He found that Plaintiff was not significantly limited in fourteen out of twenty areas of assessment and was moderately limited in six. [Tr. 361-63]. He, too, found that Plaintiff has no marked limitations. [Id.]. He also stated that Plaintiff could "[p]erform simple and some detailed tasks over full workweek. Can interact infrequently or one to one with general public and meet basic social demands in a work setting. Can adapt to gradual or infrequent changes." [Id.].

The three Psychiatric Review Technique forms all indicate that Plaintiff has no episodes of decompensation, mild restriction of activities of daily living and mild or moderate difficulties in maintaining social function and maintaining concentration, persistence, or pace. [Tr. 297-307, 331-344, 364-377]. Dr. Hansmann estimated that Plaintiff had a low average intellectual quotient, but only mild to moderate overall psychiatric impairments. [Tr. 331-344].

Plaintiff's mother, Betty Tinch, completed a Third Party Function report on March 12, 2004, stating that Plaintiff finishes what he starts, pays attention well, and follows instructions well. [Tr. 229-237]. Barbara Rich also completed a Third Party Function report, noting that Plaintiff can concentrate, understand, and gets along well with people. [Tr. 167-170].

The record reflects that the ALJ relied upon the medical source opinions of record when making his determination. [Tr. 11-18]. The ALJ ultimately found the evaluations indicated only a mild to moderate functional impairment premised on mental ability. [Tr. 16]. Specifically, he stated:

> [I] find the claimant experience moderate limitations in his ability to understand, remember, and carry out detailed and complex instructions and sustain concentration and persistence for detailed and complex instructions. However, I find that he remains fully capable of understanding, remembering, and carrying out simple or unskilled job tasks without significant restriction.

[Tr. 16]. Accordingly, the ALJ determined Plaintiff's RFC to be that of unskilled sedentary work activity. [Tr. 17].

The Court has reviewed the regulations defining "unskilled" work and finds that substantial evidence exists to support the ALJ's determination that Plaintiff retains the RFC to perform unskilled work. Additionally, the ALJ evaluated Plaintiff's past relevant work and found that he had semi-skilled or skilled previous work experience, but those skills were not transferable. [Tr. 17]. As noted above in Section IV(B), Plaintiff's obesity limits his ability to sit, stand, and lift items. Accordingly, the Court finds substantial evidence in the record to support the ALJ's determination that Plaintiff can do unskilled, sedentary work. Therefore, the ALJ properly utilized the medical vocational guidelines to determine that Plaintiff was not disabled. [Tr. 18]; 20 C.F.R. Pt. 404, Suppt. P, App. 2, 201.28 (showing that a younger aged individual with a high school education who has skilled or semi-skilled non-transferable abilities [10] is not disabled).

Plaintiff further asserts that the ALJ did not properly consider his other physical and mental impairments. [Doc. 15]. Plaintiff complained of and was diagnosed with mild chronic obstructive pulmonary disorder. [Tr. 266, 268, 310, 316, 353, 357-60]. However, he did not receive any

---

[10]The Court notes that even if the ALJ had not determined that Plaintiff's past work experience was skilled or semi-skilled, the medical vocational guidelines would still direct a finding of not-disabled. See 20 C.F.R. Pt. 404, Suppt. P, App. 2, 201.287.

medication or treatment for this condition[11], and he has never been hospitalized for shortness of breath. [Tr. 266, 268, 357-60]. Additionally, Dr. Joseph Johnson, with the Tennessee Disability Determination Services evaluated Plaintiff on May 12, 2003, and found that his lungs were clear and that he had "good airflow throughout." [Tr. 309].

Plaintiff was also diagnosed with anxiety and other mild psychological problems. [Tr. 272, 283, 310, 331-344]. He self-reported and doctors' records reflect that he has never obtained mental health treatment. [Tr. 190, 278, 297-307, 357-60, 364-77.] The record reflects that he was prescribed Paxil, but no referrals for continuing psychiatric treatment or care were recommended. [Tr. 190, 272]. Further, Plaintiff informed Ms. Smith that Paxil was working as prescribed on May 15, 2002, and that he "feels less anxious since starting Paxil." [Tr. 271]. Accordingly, substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff's mild chronic obstructive pulmonary disorder and psychological problems did not impose additional or significant work-related limitations.

Additionally, Plaintiff impliedly argues that he meets or medically exceeds listed impairment 12.05C. [Doc. 15, pp. 8-10]. However, the sole references in the record to this listed impairment indicate that Plaintiff's impairments do not meet or medically exceed listed impairment 12.05. [Tr. 331-344, 364-377]. At Step Three, the Plaintiff bears the burden of proof. Walters, 127 F.3d at 529. Accordingly, this Court finds substantial evidence exists in the record to support the ALJ's

---

[11]Plaintiff self-reported that as of September 21, 2004, he takes Albuterol, which is used to prevent wheezing and difficultly in breathing which may be caused by chronic obstructive pulmonary disease and asthma. [Tr. 241]; National Library of Medicine, MedlinesPlus Drug Information: Albuterol Inhalation, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a 682145.html (last visited July 25, 2007). However, the record does not indicate that this pharmaceutical was prescribed to Plaintiff.

determination that Plaintiff's mental impairments do not meet or medically exceed that of a listed impairment.

In sum, the Court finds that the ALJ did not err in assessing Plaintiff's physical and mental impairments and whether they imposed additional and significant work-related limitations.

**V.     Conclusion**

For the reasons stated herein, it is hereby **RECOMMENDED**[12] that Plaintiff's motion for summary judgment [Doc. 14] be **DENIED** and that the Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[12] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).